OPINION
{¶ 1} Defendant-appellant, William J. Hicks, appeals his conviction in the Butler County Court of Common Pleas for engaging in a pattern of corrupt activity.
 {¶ 2} Timothy Hicks, Daniel Hicks, and appellant are brothers. On December 14, 2001, appellant was indicted on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), the Ohio RICO (Racketeer Influenced and Corrupt Organizations) Act, one count of attempted theft by deception in violation of R.C. 2923.02(A), and 21 counts of theft by deception in violation of R.C. 2913.02(A)(3) involving 18 customers and three commercial suppliers. Timothy was indicted on one count of engaging in a pattern of corrupt activity and 22 counts of complicity to theft by deception. Daniel was indicted on one count of theft by deception, one count of complicity to theft by deception, one count of forgery, and six counts of passing bad checks. Daniel pled guilty to most of the charges and was sentenced accordingly. Appellant and Timothy were jointly tried before a jury in May 2002. Timothy testified at trial, appellant did not. Daniel testified at their trial as a witness for the state.
 {¶ 3} Testimony at trial revealed that in 2000, appellant was the owner of APF Buildings, Inc., a construction company building pole barns and garages. Hired in May 2000 as a laborer, Daniel quickly became a salesperson for APF where he worked until he was fired mid-September 2000. Hired in 1999, Timothy worked in the field until APF went out of business on January 26, 2001. From February to September 2000, APF had a business account with Firstar Bank. Unlike Daniel, Timothy was a co-signatory on the account. A debit card was issued to appellant in February, and again in June. A debit card was eventually issued to Timothy in June. In September 2000, appellant closed the account with Firstar Bank and opened a business account at Fifth Third Bank where both he and Timothy were issued a debit card.
 {¶ 4} The indictment against appellant and his brothers stemmed from a continuing course of conduct in 2000 and through January 26, 2001 during which APF entered into contracts with several customers to build pole barns and other structures on their property. Upon signing the contract, the customers were required to pay a 20 percent deposit. In most instances, the customers were subsequently asked, several weeks or months later, to pay an additional amount for materials. Some customers received some materials, others never received anything. Construction starting dates were systematically delayed numerous times. Phone calls were not returned. When customers could reach him on the phone, each time appellant promised them that their building would soon be built. The barns and other structures were never built. In January 2001, most customers received a letter from an attorney informing them that effective January 26, 2001, APF was no longer in business. The customers were never refunded their money. Their losses varied from $1,680 to $19,832. With regard to the commercial suppliers, the indictment stemmed from a course of conduct in 2000 during which APF did not pay the suppliers for the materials delivered on APF construction sites.
 {¶ 5} Many customers testified that after September 2000, appellant blamed the construction delays and APF's problems on Daniel. At appellant's trial, Daniel admitted writing and turning in several phony contracts, depositing bad checks in the business account to cover the phony contracts, collecting money from four customers, allegedly for materials, to cover the bad checks, failing to turn in a legitimate contract, and collecting a check from a customer for a barn never built and cashing it for himself. According to Daniel, he was ordered by appellant to keep selling despite being behind with the current contracts, and to tell unhappy customers "something, anything." Daniel eventually confessed to his brothers mid-September 2000.
 {¶ 6} While Daniel was employed by APF from May to September 2000, testimony at trial revealed that contracts for customers were entered from March 2000 to January 2001. No structure was ever built by APF under those contracts, including under a March 2000 contract. Following Daniel's termination, APF continued to enter into contracts and collect money from customers, including in January 2001, the very month APF went out of business. Indeed, a customer testified that she entered into a contract with APF on January 4, 2001, and wrote a check for $4,500. Another customer testified that his father entered into a contract with APF in December 2000 and made a down payment of $4,250. The father was asked to pay an additional $9,500 for materials on February 1, 2001 even though APF was no longer in business as of January 26, 2001.
 {¶ 7} Testimony also revealed that despite APF's problems following Daniel's termination, appellant and Timothy kept paying themselves $1,200 a week in wages. Likewise, following Daniel's termination and as he had done from February to September 2000, appellant kept using the business account for seemingly non-business expenses such as a National Rifle Association membership; residential mortgage payments; cash withdrawals ranging from $100 to $5,500; purchases at a jewelry store, an electronics store, and a furniture store; and expenses incurred in Minnesota while attending a family wedding.
 {¶ 8} On May 30, 2002, a jury found appellant guilty on all 23 counts. Timothy was acquitted on all counts. Appellant was sentenced accordingly and ordered to pay restitution in the amount of "$111,528.36 payable to said victims; $67,500.00 payable to First Star [sic] Bank; and $100,000.00 payable to various commercial suppliers." This appeal follows in which appellant raises four assignments of error.
 {¶ 9} In his first assignment of error, appellant argues that he received ineffective assistance of counsel at trial.
 {¶ 10} To establish a claim of ineffective assistance of counsel, appellant must show that his trial attorney's performance was deficient and prejudicial. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. To establish deficient performance, appellant must show that under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. Id. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. To establish prejudice, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694.
 {¶ 11} A failure to make an adequate showing on either the "deficient performance" prong or the "prejudice" prong of the Strickland
standard will doom the defendant's ineffective assistance of counsel claim. Id. at 687. In assessing the assistance of defense counsel, the proper standard is that of "reasonably effective assistance." State v.McDougall (Dec. 18, 1997), Cuyahoga App. No. 71276, 1997 WL 781794 at * 4.
 {¶ 12} Appellant first argues that his counsel was ineffective because he never informed him of a prosecutor's plea offer. After the trial, appellant hired a new attorney who moved for a new trial based upon trial counsel's ineffective assistance of counsel. In an affidavit, appellant stated that following his trial, he learned that a plea offer, to amend the count of engaging in a pattern of corrupt activity from a first to a second degree felony and to nolle the remaining 22 counts, had been extended to his trial counsel, but that he had never been informed of the plea offer. Appellant also stated that if accepted, the plea offer "would have significantly reduced the possibility of any jail time."
 {¶ 13} The state admitted that a plea offer had been made to appellant's trial counsel the week before trial but that the offer was not as generous as appellant believed. According to the state, appellant's trial counsel indicated he had discussed the plea offer with appellant but that appellant maintained his innocence, as he had done throughout the proceedings.
 {¶ 14} A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the deficient performance prong of the Strickland test. Griffin v. United States (C.A. 6, 2003),330 F.3d 733, 737. See, also, Williams v. Arn (N.D.Ohio 1986),654 F. Supp. 226 (a trial attorney performs deficiently when he or she does not disclose to the client that the state has made a plea offer);Johnson v. Duckworth (C.A. 7, 1986), 793 F.2d 898, certiorari denied (1986), 479 U.S. 937, 107 S.Ct. 416 (criminal defense attorneys have a duty to inform their clients of plea bargains proffered by the prosecution; failure to do so constitutes ineffective assistance under the Sixth and Fourteenth Amendments).
 {¶ 15} However, even if appellant's trial counsel's performance was deficient, appellant failed to show that he was prejudiced as a result. To establish prejudice, appellant must show he would have accepted the plea offer had it been communicated to him. See Haley v. United States
(C.A. 6, 2001), 3 Fed. Appx. 426, 2001 WL 133131, certiorari denied,534 U.S. 1031, 122 S.Ct. 568. In his affidavit, appellant never alleged that had he been informed of the plea offer, he would have accepted it. In denying the new trial motion, the trial court noted that it "conveyed directly to [appellant's trial counsel] that if [appellant] * * * admitted that he was engaging in racketeering, which was the nature of the plea bargaining discussion, that [it] would treat that quite harshly. [The court] was likely to impose a severe sentence, which would approach the maximum sentence." Appellant's ineffective assistance claim regarding the plea offer, therefore, does not succeed under theStrickland test.
 {¶ 16} Next, appellant argues his trial counsel was ineffective for improperly handling a prior conviction of appellant. In 1994, Les Sturgill entered in a contract with appellant and Daniel to build a barn, giving them $8,700. The brothers split the money, never built the barn, and were subsequently convicted of theft. Before trial, appellant's trial counsel unsuccessfully moved to exclude any reference to appellant's prior bad acts. During its opening statement, the state briefly twice referred to appellant's prior conviction for theft in a pole barn scheme. Thereafter, during his opening statement, trial counsel briefly admitted that appellant had a prior conviction for a similar offense eight years ago.
 {¶ 17} At trial, the state asked Daniel about his prior criminal record, including any prior conviction related to the pole barn business. Appellant's trial counsel objected on the ground that the state was indirectly trying to introduce appellant's prior conviction into evidence. The trial court overruled the objection but instructed the jury that Daniel's testimony regarding appellant's prior similar bad acts could only be considered for the purpose of establishing appellant's motive or intention. The state was not allowed to submit a certified copy of appellant's prior conviction into evidence. At the end of the day, and again before deliberations, the trial court reiterated to the jury that evidence of appellant's prior bad acts was not admissible to prove his character, and that it could only be considered to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 18} Throughout the proceedings, appellant maintained his innocence, arguing an "incompetent businessman" defense, as well as implying that Daniel was the cause of all of APF's problems and demise. Evidence of appellant's prior bad acts was therefore clearly admissible under Evid.R. 404(B) to prove, inter alia, absence of mistake or accident. We view trial counsel's brief reference to appellant's prior conviction during opening statement as a way to minimize the state's prior disclosure of its existence. Trial counsel did object during Daniel's testimony. Based on the record before us, we cannot say that the performance of appellant's trial counsel fell below an objective standard of reasonableness. Appellant's ineffective assistance claim with regard to his prior conviction does not meet the deficient performance prong of the Strickland test.
 {¶ 19} Finally, appellant argues his trial counsel was ineffective because he (1) sought to exclude appellant's prior conviction by citing only "one irrelevant case" in his motion, (2) sought to admit statements against interest in an improper manner and did not effectively cross-examine state's witnesses, (3) never filed a demand for discovery, (4) failed to subpoena the attorney for APF to testify on behalf of appellant, (5) failed to have satisfied customers testify on behalf of appellant despite appellant's requests, and (6) failed to use an exculpatory audiotape to impeach Daniel and Timothy. The audiotape, which was never proffered, allegedly contained several incriminating statements by Timothy regarding his involvement in the pole barn scheme.
 {¶ 20} We start by noting that judicial scrutiny of an attorney's work must be highly deferential. In Strickland, the Supreme Court noted that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Strickland, 466 U.S. at 689.
 {¶ 21} With regard to discovery, the record shows that while trial counsel may not have filed a formal written request, discovery was nevertheless provided to trial counsel, in approximately the same time frame that it was provided to Timothy's trial counsel, well in advance of trial. With regard to satisfied customers, testimony was presented at trial that there were buildings built. Testimony was also presented by an investigator for the Ohio Attorney General Office, and by a customer who had contacted eight to ten references before contracting with APF and found satisfied customers. Appellant's foregoing ineffective assistance claims, therefore, do not meet the prejudice prong under the Strickland
test.
 {¶ 22} With regard to trial counsel's motion to exclude appellant's prior conviction, based upon the record before us, we cannot say that his performance fell below an objective standard of reasonableness. With regard to the audiotape, based upon the record before us, including the clear testimony of the numerous customers whose money was taken and never refunded for barns which were never built despite appellant's promises and assurances, we find that appellant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had the audiotape been used at trial.
 {¶ 23} With regard to trial counsel's improper manner in seeking to admit statements against interest and his improper cross-examination of state's witnesses, we note that hindsight reveals places in the trial transcript where a better approach could have been used and a better understanding of the Ohio Rules of Evidence could have been demonstrated. However, while trial counsel may not have conducted the most competent cross-examination, we cannot say that counsel's shortcomings constituted ineffective assistance of counsel, given the evidence in this case, and the high standard for finding ineffective assistance under Strickland.
 {¶ 24} Finally, with regard to trial counsel's failure to subpoena APF's attorney to testify on behalf of appellant, the record shows that appellant and Timothy consulted the attorney with regard to APF's problems for the first time during the week of January 15, 2001. On January 17, 2001, appellant and Timothy wrote a $500 check to the attorney. By letter dated the next day, APF's newly hired attorney sent letters to customers notifying them that effective January 26, 2001, APF would no longer be in business. In light of the foregoing, and given the evidence in this case, we find that appellant failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had APF's attorney been subpoenaed to testify. We therefore find that appellant did not receive ineffective assistance of counsel. Appellant's first assignment of error is overruled.
 {¶ 25} In his second assignment of error, appellant argues that his conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence. Appellant contends that the state failed to establish that a pattern of corrupt activity took place. In his third assignment of error, appellant argues that this same conviction is also against the manifest weight of the evidence. Appellant contends that in light of Daniel's testimony and admission that he is a liar and a thief, the jury clearly lost its way in convicting appellant. Appellant does not appeal or challenge his convictions for theft by deception.
 {¶ 26} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." See State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond reasonable doubt. Id.
 {¶ 27} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52. In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the resolution of conflicting testimony at the trial level. Id. at 389. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} Appellant was charged with engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) which states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
 {¶ 29} A "pattern of corrupt activity" is present, according to R.C. 2923.31(E), when there are "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E) requires that at least one of the incidents forming the pattern be a felony and that the incidents not be more than six years apart.
 {¶ 30} "Enterprise," as used in the Ohio RICO statute, "includes any individual, sole proprietorship, partnership, limited partnership, corporation, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).
 {¶ 31} "Corrupt activity" is defined in part as "engaging in, attempting to engage in, conspiring to engage in, soliciting, coercing, or intimidating another person to engage in [a]ny violation of [R.C.]2913.02 (theft) * * * when the proceeds of the violation * * * exceeds [$500]." R.C. 2923.31(I)(2)(c). Appellant was charged with and convicted of theft by deception in violation of R.C. 2913.02(A)(3) which states: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over the property * * * [b]y deception[.]"
 {¶ 32} Upon thoroughly reviewing the record, and viewing the evidence presented at trial in a light most favorable to the prosecution, we find that it sufficiently established the elements of the offense of engaging in a pattern of corrupt activity. First, the evidence confirmed 21 specific incidents of corrupt activity, that is thefts of property by deception, with a value exceeding $500. All of these thefts constitute felonies. See R.C. 2913.02(B).
 {¶ 33} Second, the state showed that the incidents of corrupt activity were related to the affairs of the same enterprise, to wit, APF of which appellant was the owner. It is well-established that a sole proprietor which has at least one other employee is a "group of individuals associated in fact" and therefore constitutes an enterprise under R.C. 2923.31(C). See State v. Post (Sept. 20, 1996), Lucas App. No. L-95-153, citing McCullough v. Suter (C.A. 7, 1985), 757 F.2d 142, and United States v. Benny (C.A. 9, 1986), 786 F.2d 1410, certiorari denied, 479 U.S. 1017, 107 S.Ct. 668.
 {¶ 34} Third, the evidence presented at trial indicated that the incidents of corrupt activity were not isolated. Testimony at trial showed that the bulk of the contracts, upon which the thefts by deception charges were based, was entered on a monthly basis between July and November 2000, with additional contracts in the spring of 2000 and the winter of 2000.
 {¶ 35} Finally, the incidents were not so closely related to each other and connected in time and place that they constituted a single event. The thefts by deception spanned at least six months, 21 locations, at least eight counties, and three states. "Reasonable minds could conclude that these events were not so closely related that they constituted a single incident, but instead were repeated incidents so related that they constituted a pattern of corrupt activity." State v.Gasser (1993), 89 Ohio App.3d 544, 548.
 {¶ 36} Appellant argues, however, that the state failed to show that the thefts by deception represented a threat of continuing criminal activity as required under H.J., Inc. v. Northwestern Bell Telephone Co.
(1989), 492 U.S. 229, 109 S.Ct. 2893. In that case, the United States Supreme Court held that a pattern of racketeering activity for purposes of the federal RICO statute is proven by a showing of at least two acts of racketeering activity that are related and amount to or threaten the likelihood of continued criminal activity. Id. at 239. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id. at 242.
 {¶ 37} Appellant's argument has been, however, rejected by the Second Appellate District as follows: "While Ohio's RICO provisions are modeled on the federal, Ohio's test for a `pattern' of corrupt activity is set out in R.C. 2923.31(E). It does not include the particular `continuity' requirement imposed in H.J., Inc. That requirement is not of constitutional dimension or order. Therefore, Ohio's requirements govern and we are not bound by federal requirements in these respects." Statev. Lang (Feb. 4, 1993), Miami App. No. 92-CA-3, 1993 WL 26758 at *6. In light of the foregoing, we therefore find that appellant's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence.
 {¶ 38} We further find that the conviction was not against the manifest weight of the evidence. The record is replete with customers who testified as to the evasive and wrongful actions taken by, or directed by, appellant with regard to the customers' contracts. Evidence was presented that at appellant's direction, customers were required to pay a 20 percent deposit upon signing a contract, and later an additional amount for materials; that the customers' checks were cashed, yet only some customers received some materials; that appellant promised customers their barns would be built but failed to deliver any barns; and that appellant failed to refund customers' money.
 {¶ 39} Appellant's argument that the jury lost its way by convicting him despite Daniel's testimony is meritless. While it is undisputed that Daniel caused some of APF's problems, and is by his own admission a liar and a thief, Daniel was only working for APF between May and mid-September 2000. A barn contracted in March 2000, before Daniel was hired, was never built. Following Daniel's termination, appellant kept misusing the business account, paying himself $1,200 a week in wages, and contracting with customers, cashing their checks and promising them barns but failing to build them. A customer was even asked to pay for materials after APF was no longer in business. Appellant's second and third assignments of error are overruled.
 {¶ 40} In his fourth assignment of error, appellant argues that the trial court improperly ordered him to pay restitution. Specifically, appellant challenges the restitution order to commercial suppliers as those were neither identified in the judgment entry or the indictment. Likewise, appellant challenges the restitution order to Firstar Bank as he was neither charged with nor convicted of the loss suffered by the bank.
 {¶ 41} R.C. 2929.18(A)(1) authorizes a trial court to order restitution to the victim of the offender's crime in an amount based on the victim's economic loss. R.C. 2929.01(M) defines "economic loss" in part as "any economic detriment suffered by a victim as a result of the commission of a felony." The record must contain sufficient evidence for the court to ascertain the amount of restitution to a reasonable degree of certainty. State v. Williams, Butler App. No. CA2002-09-214, 2003-Ohio-4453, at ¶ 31. The amount of restitution must bear a reasonable relationship to the loss suffered. Id.
 {¶ 42} Contrary to appellant's assertion, the three commercial suppliers were listed in the indictment, to wit: Moraine Materials, Home Depot, and Holmes Lumber Building Center. Representatives for all three companies testified as to the amounts of loss suffered when APF failed to pay for materials delivered on construction sites. Upon reviewing the record, we find that the amount of restitution was determined by the trial court to a reasonable degree of certainty. The trial court, therefore, did not err by ordering appellant to pay $100,000 in restitution to commercial suppliers.
 {¶ 43} Appellant was also ordered to pay $67,500 in restitution to Firstar Bank. Testimony at trial indicated that the loss suffered by the bank was caused by the withdrawal of more money than there were funds in APF's business account. Appellant was never indicted with regard to the bank's loss. As a result, appellant argues it was error to order him to pay restitution to the bank. We agree.
 {¶ 44} As already noted, R.C. 2929.18(A)(1) permits a trial court to order a felony offender to pay restitution to the victim of theoffender's crime. Restitution is limited to the actual loss caused by the offender's criminal conduct for which he was convicted. State v. Swart
(Oct. 23, 2000), Clinton App. No. CA2000-02-006, at 10, citing State v.Brumback (1996), 109 Ohio App.3d 65. "Thus, restitution can be ordered only for those acts that constitute the crime for which the defendant was convicted and sentenced." State v. Hafer (2001), 144 Ohio App.3d 345,348.
 {¶ 45} Although appellant was charged with 23 counts, he was never charged with or convicted with regard to the loss suffered by Firstar. The state's explanation for its failure to indict appellant with regard to Firstar is that it did not realize for a while what had been done to the bank. However, nothing prevented the state from moving to amend the indictment or seeking a supplemental indictment to charge appellant with regard to Firstar once it discovered the cause of the bank's loss. It failed to do so. As a result, the trial court only had authority to order appellant to pay restitution to the 18 customers and the three commercial suppliers. Just as the trial court could not sentence appellant to serve a prison term for any crime involving Firstar for which he was not charged or convicted, the trial court could not sentence appellant to pay restitution to Firstar. Swart at 11.
 {¶ 46} The state nevertheless urges us to affirm the order of restitution to Firstar because the bank's loss occurred as a continuing course of the criminal enterprise in which appellant was involved. While the state may prove a violation of R.C. 2923.32(A)(1) (engaging in a pattern of corrupt activity) with evidence of unindicted predicate offenses where the bill of particulars sufficiently apprises a defendant of the unindicted charges, see State v. Siferd, 151 Ohio App.3d 103,2002-Ohio-6801, we decline to endorse such an expansive reading of the phrase "the offender's crime" for purposes of restitution. See R.C.2901.04(A); State v. Sutherland (Aug. 15, 1997), Greene App. No. 97CA25. Because appellant was never charged with felonious conduct that caused the economic loss to Firstar, the trial court cannot order him to pay restitution to the bank.
 {¶ 47} The state also cites a footnote in Swart for the proposition that the newly amended definition of economic loss in R.C. 2929.01(M) encompasses the bank's loss. We disagree. Prior to March 23, 2000, an inadvertently linked series of statutory definitions created an unintentional anomaly in sentencing. A trial court could order restitution only in cases where the offender's conduct posed a substantial threat of personal injury or death. As we noted in Swart,
"R.C. 2929.01 was amended, effective March 23, 2000, so that the term `economic loss' encompasses any economic detriment suffered by a victim as a result of the commission of any felony. This revision corrects the unfortunate anomaly under former R.C. 2929.01 which, in some cases, allowed criminals to profit from their crimes." Swart, Clinton App. No. CA2000-02-006, at 10, fn. 2.
 {¶ 48} Although "economic loss" now encompasses any economic detriment suffered by a victim as a result of the commission of a felony, "includ[ing] * * * any property loss * * * incurred as a result of the commission of the felony," R.C. 2929.01(M), we decline to apply R.C. 2929.01(M) to an alleged felony victim where the defendant has not been charged with respect to that particular victim. Based upon R.C.2929.18(A)(1) and Swart, restitution clearly remains limited to the loss caused by the offender's criminal conduct for which he was indicted. The trial court therefore erred by ordering appellant to pay restitution to Firstar.
 {¶ 49} Appellant's fourth assignment of error is accordingly sustained in part and overruled in part. Appellant's sentence requiring him to pay restitution to the 18 customers and three commercial suppliers is affirmed. Pursuant to App.R. 12(B), that portion of appellant's sentence requiring him to pay restitution to Firstar is vacated.
 {¶ 50} Judgment is affirmed as modified.
Valen, P.J., and Powell, J., concur.