OPINION
{¶ 1} Defendant-appellant, Joy Major Hoop, appeals a decision of the Brown County Court of Common Pleas, denying her motion for postconviction relief.
 {¶ 2} Appellant was convicted of conspiracy to commit aggravated murder and complicity to commit aggravated murder in the death of her husband, Donald "Whitey" Hoop. Evidence at trial revealed that on the evening of February 9, 1997, appellant, Kathy Kerr, Kenny Swinford, A.J. Cox and Carl Lindsey were all in appellant's bar. According to Cox, Swinford and Kerr, appellant and Lindsey discussed killing Whitey that evening. In the early morning hours of February 10, 1997, Whitey was shot in the parking lot of the bar. Police arrested Lindsey for the murder and their investigation revealed appellant's involvement in planning the murder.
 {¶ 3} Appellant appealed her conviction and this court remanded the case for the trial court to determine whether privileged material should have been considered in deciding appellant's motion for a new trial.State v. Hoop (1999), 134 Ohio App.3d 627 ("Hoop I"). On remand, the trial court considered the privilege issue, and subsequently denied appellant's motion for the new trial. Appellant again appealed and this court affirmed her conviction. State v. Hoop, (Aug. 6, 2001), Brown App. No. CA2000-11-034 ("Hoop II").
 {¶ 4} On March 22, 1999, while appellant's first appeal was pending before this court, she filed a motion for postconviction relief with the trial court. She later amended the petition on April 19, 2002. After considering the motion and attached affidavits, the trial court found no substantial grounds for relief and denied the motion without a hearing. Appellant now appeals the trial court's denial of her postconviction relief motion, raising six assignments of error for our review.
 Denial of Funding for Investigative Services {¶ 5} In her first assignment of error, appellant contends that her due process rights were violated when the trial court denied her request for funding for investigative services. When appellant filed her request for leave to amend her postconviction relief motion, she also requested that the trial court grant "funding to allow for investigative services to locate exculpatory evidence that was not discovered prior to trial because of trial counsels' ineffective assistance." The trial court denied the request for investigative funds.
 {¶ 6} A postconviction proceeding is not an appeal of a criminal conviction, but rather, a collateral civil attack on the court's judgment. State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. State postconviction review itself is not a constitutional right. State v.Steffen, 70 Ohio St.3d 399, 410, 1994-Ohio-111. Therefore, a petitioner in a postconviction proceeding possesses only the rights given by statute. Calhoun at 281.
 {¶ 7} Ohio courts have held that it is not error for a trial court to deny a request for discovery or for the appointment of an expert in a postconviction relief petition because Ohio's statute, R.C. 2953.21, does not provide either a right to discovery or to expert assistance. See, e.g., State v. Cunningham, Allen App. No. 1-04-19, 2004-Ohio-5892, ¶69, 70; State v. Coleman, Clark App. No. 2001-CA-42, 2002-Ohio-5377;State v. Hooks (Oct. 30, 1998), Montgomery App. Nos. CA16978, CA17007. Likewise, we find that because nothing in R.C. 2953.21 provides a right for investigative funding to a petitioner, the trial court did not err in denying appellant's request. See State v. Stedman, Cuyahoga App. No. 83531, 2004-Ohio-3298, ¶ 35, 36 (trial court did not err in denying request for private investigator and forensics expert in postconviction relief proceeding). Appellant's first assignment of error is overruled.
 Appellant's Decision Not to Testify at Trial {¶ 8} Because appellant's second and third assignments of error are interrelated, we address them together. Appellant contends, in these two assignments, that the trial court should have granted her petition, or at least a hearing, on her claims that she was prejudiced by a lack of understanding regarding potential cross-examination if she testified and by her trial counsel's ineffectiveness in explaining that right to her.
 {¶ 9} Under Ohio's postconviction relief statute, a petitioner is not automatically entitled to an evidentiary hearing. R.C. 2953.21(C); Statev. Calhoun, 86 Ohio St.3d 279, 283, 1999-Ohio-102. Instead, before granting a hearing, the trial court must consider "whether there are substantive grounds for relief." R.C. 2953.21(C). The court must consider whether there are grounds to believe that "there was such a denial or infringement of the person's rights to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1).
 {¶ 10} The Ohio Supreme Court has held that in the interest of judicial economy and efficiency, it is not unreasonable to require the petitioner to show in his petition that such errors resulted in prejudice before a hearing is required. Calhoun; State v. Jackson (1980),64 Ohio St.2d 107, 112.
 {¶ 11} When considering whether or not to grant a hearing on a postconviction petition, a trial court should examine the contents of the affidavits offered in support of the petition. State v. Nelson (Sept. 21, 2000), Cuyahoga App. No. 77094. Although a trial court should give deference to affidavits filed in support of a postconviction relief petition, it may exercise its discretion when assessing the credibility of the affidavits. Calhoun, 86 Ohio St.3d 279, paragraph one of the syllabus. Furthermore, a trial court may discount self-serving affidavits from the petitioner or her family members. State v. Moore (1994),99 Ohio App.3d 748.
 {¶ 12} Appellant first argues in her petition that she did not voluntarily waive her right to testify because she did not fully understand the limitations on cross-examination by the prosecutor. The prosecutor in this case, Thomas Grennan, represented appellant in a civil suit she filed to collect a debt from an ex-husband, Chris Ward, in 1990. In an affidavit, appellant alleges that she gave Grennan confidential information during the course of the representation, and that she disclosed her anger towards the ex-husband and a desire to "get even" with him to Grennan. According to appellant, her relationship with Grennan deteriorated over the course of his representation and ended in a heated argument.
 {¶ 13} Appellant alleges that one of her attorneys in this case, R. Scott Croswell III, told her "that if I take the stand, the prosecutor was very familiar with who I was and that `it was not going to be pretty' if he cross-examined me." Appellant claims that she interpreted this remark to mean that Grennan would be able to inquire into matters within the scope of their prior attorney-client relationship, including her angry outbursts at him and her ex-husband. Appellant claims that because she did not understand that Grennan could not inquire into matters involved in their prior attorney-client relationship, her decision not to testify was not knowingly, voluntarily and intelligently made.
 {¶ 14} In response to appellant's petition, the state submitted an affidavit from Prosecutor Grennan addressing his previous representation of appellant. In the affidavit, Grennan acknowledges his prior representation of appellant in an action involving a debt of her previous husband. Grennan, however, alleges that appellant did not make threats against the ex-husband, or to him, and that their professional relationship did not end badly, as alleged by appellant, and in his opinion, they parted on good terms.
 {¶ 15} In addition, at trial, a discussion regarding appellant's decision not to testify was held on the record. Appellant was told that she had the right to testify and a right not to testify. Her counsel stated that the choice was hers, and that he had explained and they had discussed the issue of whether she would testify. Appellant's counsel also stated that he recommended that it was not necessary for her to testify, but that it didn't make any difference to him and the choice was hers. He further stated that the issue was discussed with her family and appellant made the decision that it was not necessary for her to testify. Appellant agreed with each of the above statements of counsel and indicated, "My decision is not to testify."
 {¶ 16} In ruling on the petition, the trial court found that numerous factors go into determining whether to testify at trial and that appellant's "misapprehension" regarding the matters the prosecutor would be allowed to delve into on cross-examination was unreasonable. The trial court further found appellant failed to establish any prejudice as a result of her decision not to testify.
 {¶ 17} We find no error in the trial court's decision on this issue. Other than appellant's statements to the contrary, there is nothing to support her assertion that her decision not to testify was not knowingly, voluntarily and intelligently made. Moreover, there is nothing to establish how she was prejudiced by her choice not to testify.
 {¶ 18} In a related argument in her third assignment of error, appellant asserts that her trial counsel was ineffective for failing to explain the nature and extent of her right to testify. She contends that she was prejudiced by her attorney's failure to tell her that the prosecutor could not question her regarding any information he obtained in his prior representation. She argues she was prejudiced because the evidence against her was not overwhelming, and testifying in her own defense "could have made the difference." We find no merit to this argument.
 {¶ 19} When ineffective assistance of counsel is alleged in a postconviction relief petition, the petitioner "bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980),64 Ohio St.2d 107, syllabus.
 {¶ 20} Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 49. A reviewing court will not second-guess trial strategy decisions. State v. Mason, 82 Ohio St.3d 144, 157, 1998-Ohio-370. The decision whether to call a defendant as a witness falls within the purview of trial strategy. State v. Adkins (2001), 144 Ohio App.3d 633,646. As stated by the Ninth District, "[i]t is difficult to imagine a better example of trial strategy than a decision of whether a defendant should testify on his own behalf. This Court is not in a position to second guess defendant's trial counsel's advice on that decision." Statev. Mabry (Oct. 9, 1996), Medina App. No. 2514-M.
 {¶ 21} In this case, there may have been several strategic reasons for not calling Hoop to testify. Witnesses testified that appellant did drugs with them, she said she wanted a divorce from Whitey, that after the murder she told someone to tell Lindsey that she still loved him, and other negative information that appellant would be subject to cross-examination about if she decided to testify.
 {¶ 22} In addition, appellant has failed to demonstrate prejudice as a result of her decision not to testify. Instead, she simply asserts that because the evidence against her was not overwhelming, testifying in her own defense "could have made the difference." Such a conclusory statement does not establish prejudice.
 {¶ 23} Appellant's second and third assignments of error are overruled.
 Testimony of Kathy Kerr {¶ 24} In her fourth assignment of error, appellant contends that her conviction was the result of perjured testimony. At trial, Kathy Kerr testified that she was in the bar with Hoop and Lindsey, on the night appellant's husband was shot. She testified that they talked about killing Whitey and that she saw appellant hand Lindsey a little black gun that night.
 {¶ 25} In support of her argument, appellant submitted an affidavit from Angel Harbour, who stated that after the trial, Kerr told her that she lied in her testimony against appellant because appellant would not give Kerr money to get out of town. Appellant argues that Kerr's credibility was a central issue in defending her case and the state of Ohio's interest in justice is not met when one citizen bears false witness against another.
 {¶ 26} However, postconviction relief is available only to redress constitutional violations. R.C. 2953.21(A)(1)(a); State v. Walden
(1984), 19 Ohio App.3d 141, 146. Evidence of perjury alone, without evidence that the prosecution knew of the perjury, does not implicate constitutional rights, and therefore, does not support a petition for postconviction relief. State v. Britton, Marion App. No. 9-99-81, 2000-Ohio-1881; State v. Kimble (Sept. 22, 1988), Cuyahoga App. No. 54154. Without a showing of knowledge on the part of the prosecution, a defendant's remedy, if any, is by a motion for a new trial under Crim.R. 33.
 {¶ 27} In this case, appellant has not alleged that the prosecution was in any way aware that Kerr's testimony was perjured. Therefore, the issue is not properly raised under the postconviction relief statute. Appellant's fourth assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 28} Appellant contends in her fifth assignment of error that her trial counsel was ineffective in four separate areas. As mentioned above, appellant bears the burden of presenting evidence that trial counsel was not competent and that she was prejudiced by the ineffectiveness. State v. Jackson (1980), 64 Ohio St.2d 107, syllabus.
 {¶ 29} Appellant first argues that counsel was ineffective by lying to her concerning hiring a private investigator. According to appellant's affidavit, she and Croswell met with private investigator Kim Gray to discuss the scope and nature of the work she would perform on the case. According to appellant, Croswell told her after the meeting that Gray was working in the field and interviewing witnesses. Appellant submitted an affidavit from Gray, who stated that although she met with Croswell and appellant and discussed appellant's case, she never received a signed contract nor a retainer and therefore, did not work on the case.
 {¶ 30} Counsel has the duty to investigate the law and the facts relevant to the charges against his client. State v. Parks (1990),69 Ohio App.3d 150, 156. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.State v. Bradley (1989), 42 Ohio St.3d 136, 142. A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, "applying a heavy measure of deference to counsel's judgments." Strickland v. Washington (1984), 466 U.S. 668, 69,104 S.Ct. 2052. Attorneys are entitled to be selective and need not pursue every conceivable avenue. State v. Murphy, 91 Ohio St.3d 516, 542,2001-Ohio-112.
 {¶ 31} At a hearing on the privilege issue, Croswell discussed his decision not to hire Gray. He stated that she was suggested to him by another investigator, but he was not particularly impressed by her. Croswell further stated that he did not think the factual issues were that difficult and so he decided to talk to the people himself, since witness interviews were what the investigator would be doing anyway.
 {¶ 32} We find Croswell was not ineffective for failing to hire Gray to investigate. Under the facts of this case, it was reasonable for him to decide to interview witnesses by himself without an investigator. In addition, appellant has not alleged specifically how she was prejudiced, other than she would have "imposed on her family" to finance the investigation if she had known that Croswell had not hired Gray.
 {¶ 33} Appellant next argues that Croswell was ineffective for failing to contact or locate certain witnesses for the defense. In general, the decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." State v.Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, ¶ 125. Appellant contends that counsel was ineffective for failing to interview and call as a witness a man named Norman Fisher, who gave a statement to police that he was in the bar on the night of the shooting and did not see appellant hand a gun or weapon to Lindsey. However, according to all the witnesses, and appellant's own statement, Fisher had already left the bar when the discussion about killing Whitey occurred.
 {¶ 34} Appellant next argues that Calvin Dehart testified at trial, but counsel failed to ask if he had ever seen Lindsey with a gun prior to the night of the murder. According to Dehart's affidavit, if asked, he would have testified that prior to the night of the shooting, he "saw Carl Lindsey with a small black handgun and heard him say he was going to take Whitey out." According to appellant, this testimony would have impeached Kerr's testimony that appellant gave Lindsey the gun to kill Whitey.
 {¶ 35} Although defense counsel did not ask Dehart on direct examination if he had ever seen Lindsey with a gun, during cross-examination, Dehart was specifically asked by the prosecutor if he had ever seen Lindsey with a gun. Dehart replied, "No, I have not." The prosecutor asked another question and Dehart repeated, "I've never seen Carl with a gun." Given that Dehart's trial testimony is inconsistent with his affidavit, we cannot say that Croswell was ineffective for failing to ask this question or that appellant was prejudiced by the failure to ask this question.
 {¶ 36} Appellant also submitted the affidavits of Michelle Denier and Vicki Major Cassidy, who both aver that they were contacted by Croswell and asked to testify, but were never called as witnesses. Appellant has not presented any argument to establish how the failure to call these women as witnesses prejudiced her case. Moreover, at trial, appellant and counsel had a discussion with the court in which appellant stated that although she and Croswell had discussed calling a couple of other witnesses, the witnesses appellant wanted were called and testified and there was no one else appellant wanted to testify.
 {¶ 37} We find that the decision not to call these witnesses, not to ask certain questions and in deciding which witnesses to interview all falls within the area of trial strategy and that appellant has failed to establish any prejudice in this regard.
 {¶ 38} Appellant next argues that trial counsel was ineffective for failing to investigate who provided the murder weapon to Lindsey and for believing that Lindsey's own investigator would turn over such information.
 {¶ 39} Before trial, Croswell believed that Lindsey's investigator discovered a witness who could testify that he gave Lindsey the weapon used to kill Whitey. He filed a motion for "Disclosure of Exculpatory Information by Counsel for Codefendant" as a means to discovery of the information. Lindsey's attorney argued that any information the investigator discovered was protected by the attorney-client privilege. The trial court agreed and denied the motion. This discovery issue was raised on appeal, and we remanded for the trial court to determine first, if such a witness existed, and second, whether the information was privileged. See Hoop I, 134 Ohio App.3d 627. On remand, the trial court determined that appellant had not sufficiently established that such a witness existed and an in camera hearing with the investigator was not required to determine if the privilege existed. We affirmed this determination on appeal. See Hoop II.
 {¶ 40} Appellant now argues that trial counsel was ineffective for pursuing the witness in this manner and should have conducted an investigation instead of attempting to obtain the name of the witness by means of the motion. Appellant contends that counsel was ineffective because he "did not understand hornbook law that the attorney-client privilege and work-product doctrine applied to agents of a co-defendant's attorney." First, we note that the above statement is contrary to this court's determination of the privilege issue in Hoop I. In that case, we explained that the privilege is not inviolate and can be overcome under certain circumstances. See Hoop I.
 {¶ 41} Second, the record does not support appellant's assertion that counsel failed to investigate. At the pretrial hearing on this issue, Croswell stated that he had attempted to find the potential witness but was unable to discover the identity of the witness. Croswell testified at the remand hearing that during his investigation, he interviewed people who had heard secondhand that Lindsey had a gun prior to the day of the murder, but none of these people had actually seen Lindsey with the gun. Croswell stated that he was unable to determine the name of the person who allegedly gave the gun to Lindsey.
 {¶ 42} Accordingly, we find no merit to appellant's argument that counsel was ineffective in regard to investigating the identity of the witness. The record shows that counsel attempted to find the witness, but was unable to do so, and pursued the discovery angle in another attempt to determine the name of the witness. Moreover, appellant has failed to establish that she was prejudiced, as the existence of this witness has never been established and is entirely speculative.
 {¶ 43} Appellant's final argument under this assignment of error is that counsel was ineffective in failing to raise the conflict of interest issue regarding prosecutor Grennan as discussed in her second and third assignments of error.
 {¶ 44} She asserts that she was prejudiced because she would have testified if she had known that Grennan could not ask her questions regarding issues involving his prior representation.
 {¶ 45} As discussed in appellant's second and third assignments of error, appellant failed to establish that her decision not to testify was anything other than voluntary or that she was prejudiced in this regard.
 {¶ 46} In conclusion, we find no merit to any of appellant's arguments that she received ineffective assistance of counsel. Therefore, appellant's fifth assignment of error is overruled.
 Constitutionality of Ohio's Postconviction Relief Statute {¶ 47} In her sixth assignment of error, appellant argues that R.C.2953.21 et seq., Ohio's postconviction relief statute, is unconstitutional as applied to her. Specifically, she contends that because of the time limitations on postconviction relief motions, she was required to assert an ineffective assistance of counsel claim against her trial counsel at the same time trial counsel was representing her on appeal. According to appellant, she attempted to obtain other counsel to represent her on appeal, but was unsuccessful, and trial counsel was willing to represent her on appeal. She contends that the time limitation requirements for postconviction relief forced her to assert ineffective assistance of counsel claims against trial counsel at the same time they were representing her on appeal.
 {¶ 48} Although appellant argues that she had no other choice since she was under the 30-day time limitation for filing an appeal and no other attorneys were available, this does not amount to a constitutional violation. Appellant cannot establish that Ohio's postconviction relief statute is unconstitutional as applied to her when the choice to have trial counsel represent her on appeal was her own. Appellant's sixth assignment of error is overruled.
 {¶ 49} Judgment affirmed.
Young, P.J., and Powell, J., concur.