OPINION
{¶ 1} Defendant-appellant, Brian Keith Heffernan, appeals separate decisions of the Clermont County Court of Common Pleas overruling his motion to dismiss the indictment and his motion for new trial after he was convicted for murder. Appellant also appeals his sentence. For the reasons outlined below, we affirm in part and reverse in part.
 {¶ 2} On the evening of June 15, 2004, appellant and his girlfriend, Gail Sims, had a confrontation in their Union Township home. Appellant contends that he and Sims were arguing over her infidelity and increasing drug use. The shouting match turned physical when the two began punching each other. According to appellant's police statement, he and Sims eventually had their hands around each others' necks. Appellant admitted to squeezing Sims' neck until she went limp.
 {¶ 3} The following morning, Sims' abandoned vehicle was discovered at a gravel quarry in eastern Hamilton County. A police investigation revealed Sims' lifeless body in the trunk of the car. On June 22, 2004, appellant was apprehended by United States Customs agents while reentering the country from Mexico. He was detained by law enforcement authorities in Texas until Ohio officers arrived for questioning. Although appellant initially denied having any knowledge of Sims' death, he eventually confessed to killing Sims and disposing of her body at the quarry.
 {¶ 4} On June 30, 2004, appellant was indicted on one count of murder in violation of R.C. 2903.02(A) (purposeful murder). A second indictment, involving a separate case against appellant, was returned on May 4, 2005. The second indictment charged appellant with one count of murder in violation of R.C.2903.02(B) (felony murder); two counts of tampering with evidence in violation of R.C. 2921.12(A)(1) and (A)(2), respectively; two counts of forgery in violation of R.C. 2913.31(A)(1) and (A)(3), respectively; and one count of gross abuse of a corpse in violation of R.C. 2927.01(B). Upon the state's motion, the trial court consolidated the two indictments against appellant for trial.
 {¶ 5} On May 18, 2005, appellant moved to dismiss the second indictment on speedy trial grounds. The trial court granted appellant's motion as to the forgery and gross abuse counts, but denied the motion as to the murder and tampering counts. Following a four-day trial, the jury returned verdicts on July 22, 2005. Appellant was found guilty on one count of purposeful murder, one count of felony murder, and two counts of tampering with evidence.
 {¶ 6} On August 26, 2005, appellant moved for a new trial on the basis of ineffective assistance of counsel. The trial court denied the motion. For sentencing purposes, the murder counts in the two indictments were merged. Appellant received a sentence of 15 years to life for murder and four years on each of the two tampering with evidence counts. The two four-year terms were to be served consecutively to each other and to the murder term. Appellant timely appealed, raising three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS IN VIOLATION OF HIS RIGHTS UNDER THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING PROVISIONS OF THE OHIO CONSTITUTION."
 {¶ 9} Appellant contends that the trial court erred in overruling his motion for new trial because he received ineffective assistance of counsel.[1]
 {¶ 10} In order to determine that a new trial is warranted due to ineffective assistance, appellant must demonstrate that defense counsel's performance fell below an objective standard of reasonableness and that appellant was prejudiced as a result.Strickland v. Washington (1984), 466 U.S. 668, 687-88, 693,104 S.Ct. 2052. Prejudice exists where appellant establishes the existence of a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694.
 {¶ 11} A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 142, citing Strickland at 689. While the wisdom of a given strategy may be debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶146.
 {¶ 12} Appellant raises three issues in support of his ineffective assistance claim. First, appellant faults defense counsel for failing to review certain discovery materials, including post-incarceration telephone conversations and letters, which the prosecution used against him at trial. At the hearing on appellant's motion for new trial, counsel acknowledged that he did not listen to the recordings because he believed they only contained information that the prosecutors were offering in support of the second indictment. Whether or not the information gleaned from the tapes supported the second indictment was, according to counsel, a question of law for the appeals court.
 {¶ 13} Counsel also testified that he directed appellant to take the witness stand in the hopes of obtaining a voluntary manslaughter verdict. Appellant argues that counsel was not prepared to mitigate the damages when the prosecution used appellant's statements in the recorded conversations to attack his credibility during cross-examination. Appellant also asserts that counsel's decision to have him testify in an attempt to obtain a manslaughter verdict was not a good strategic choice because it was made without the benefit of full information, i.e., the information on the tapes. Appellant submits that counsel's failure to review the detrimental information contained in the recordings violated counsel's duty to reasonably investigate the facts.
 {¶ 14} In overruling appellant's motion for new trial, the trial court deferred to counsel's decision to have appellant testify in pursuit of a manslaughter verdict as a reasonable, strategic choice. The court noted that counsel did not listen to the tapes because his co-counsel reviewed them and counsel believed they were irrelevant to the murder charge. The court conceded that counsel's choice not to listen to the recordings himself "may not have been wise" and "[did] not fall within the `trial strategy' realm[.]" Nonetheless, the court ruled that appellant failed to demonstrate that the result of trial would have been different had counsel listened to the recordings.
 {¶ 15} Appellant correctly notes that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."Strickland, 466 U.S. at 691. This court has previously recognized counsel's duty to investigate the facts pertinent to the charges against one's client. See State v. Hoop, Brown App. No CA2004-02-003, 2005-Ohio-1407, ¶ 30. However, we have also observed that, after counsel chooses an adequate theory of defense, there is no duty to prepare for alternative theories. Id., citing State v. Murphy, 91 Ohio St.3d 516, 542,2001-Ohio-112. Accordingly, even if there was a better strategy available, counsel's reasonable course of action in pursuit of a manslaughter verdict does not form the basis of a claim for ineffective assistance.
 {¶ 16} Counsel advised appellant to take the stand because he believed appellant was the only one who could offer testimony to support a voluntary manslaughter jury finding. Key to this approach was proving that appellant lacked the requisite intent for murder. Counsel believed that the only chance to obtain a lesser sentence was to demonstrate appellant's lack of intent to murder his girlfriend by eliciting testimony to that effect. In having appellant testify, counsel sought to exhibit appellant's sorrow and intense emotion in the face of Sims' death. We agree with the trial court that this tactic fell within the sphere of trial strategy. See Hoop at ¶ 20. Furthermore, appellant's insistence that counsel may have been able to lessen the negative impact of the calls and letters amounts to mere speculation and does not support a finding of ineffective assistance. See Id. at ¶ 22. While counsel's failure to review the recordings cannot be commended it does not, by itself, constitute ineffective assistance.
 {¶ 17} As stated, co-counsel listened to and informed counsel regarding a good portion of the material on the tapes, and counsel concluded that the recordings had no bearing on the manslaughter defense. Counsel did not entirely fail to consider the materials; instead, he chose to concentrate on ways to further the manslaughter trial strategy. Not only was this objectively reasonable, but appellant failed to prove that the result of trial would have been different had counsel more thoroughly explored the recordings. In addition, we note that appellant was informed that his jailhouse telephone and postal communications would be screened. Appellant was thus aware of the content of the recordings, and cannot claim surprise on the witness stand when confronted by the prosecution.
 {¶ 18} Second, appellant claims that he suffered ineffective assistance when counsel neglected to disclose a plea agreement offered by the prosecution. The state offered to reduce appellant's potential sentence by ten years by dropping the two tampering charges if appellant pled guilty to murder.
 {¶ 19} "A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel * * * and satisfies the deficient performance prong of the Strickland test." State v. Hicks, Butler App. No. CA2002-08-198, 2003-Ohio-7210, ¶ 14. But for the claim to have merit, appellant must demonstrate prejudice by showing that he would have accepted the offer had it been conveyed to him. Id. at ¶ 15.
 {¶ 20} During the course of the representation, counsel discussed the possibility of a plea with appellant. According to counsel's testimony at the new trial motion hearing, counsel and appellant agreed that "the sentence dictated that the case be tried." Although the state offered a reduced aggregate sentence in exchange for a guilty plea on the murder charge, this did not coincide with counsel's manslaughter strategy. Counsel perceived that the strategy, if successful, would result in a lesser sentence than that offered by the state in its plea deal. Consequently, counsel did not communicate the offer to appellant. The trial court concluded that such a decision fell within the range of reasonable professional assistance.
 {¶ 21} While the wisdom of counsel's decision not to convey the plea offer to appellant may be debatable, the record reveals that appellant failed to demonstrate prejudice by showing that he would have accepted the offer. See Hicks at ¶ 15. Counsel testified that when he discussed the charges and potential sentences with appellant, appellant never expressed any reluctance towards taking the risk of proceeding with trial. Appellant has presented no evidence, and in fact does not even allege in his arguments on appeal, that he would have accepted the offer. Therefore, consistent with this court's ruling inState v. Hicks, 2003-Ohio-7210, we hold that appellant did not demonstrate ineffective assistance from counsel's failure to communicate the plea offer.
 {¶ 22} Third, appellant challenges counsel's failure to file a motion to suppress the statements made during his detention in Texas. In an undated letter, appellant expressed his desire for counsel to file a motion to suppress these statements due to alleged coercion. Appellant asserted that he was beaten, tricked into signing a waiver of his rights, threatened, and forced to confess.
 {¶ 23} "[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v.Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, citingKimmelman v. Morrison (1986), 477 U.S. 365, 384,106 S.Ct. 2574. Such an omission signifies ineffective assistance only when the record establishes that the motion would have been successful if made. Cf. State v. Robinson (1996), 108 Ohio App.3d 428,432-33. At the hearing on appellant's motion for new trial, counsel testified that he believed the motion had no chance of success because, in his opinion, appellant's statements did not amount to a confession. In addition, counsel stated his belief that the sorrow and remorse demonstrated by appellant in Texas aligned with the defense strategy of pursuing a voluntary manslaughter verdict by showing lack of purpose to commit murder.
 {¶ 24} We conclude that the decision not to file a motion to suppress was strategic and falls within the range of effective assistance. Counsel believed the motion would be fruitless, and felt that the content of appellant's statements in Texas would aid in proving manslaughter instead of murder. Furthermore, appellant did not demonstrate prejudice as a result of the failure to file a suppression motion. Given the amount of evidence in favor of appellant's guilt, including DNA evidence, admissions while incarcerated, and witness testimony, appellant did not demonstrate that the result of trial would have been different had the Texas statements been suppressed.
 {¶ 25} Appellant's first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN DENYING HIS MOTION TO DISMISS THE SECOND INDICTMENT WITH THE EXCEPTION OF COUNT THREE BECAUSE THE STATE FAILED TO COMPLY WITH THE TIME LIMITATIONS OUTLINED IN R.C. 2945.71, AND THE DUE PROCESS PROVISIONS OF THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 28} Appellant claims that the trial court was obligated to dismiss the murder count and one of the tampering with evidence counts in the second indictment on speedy trial grounds.[2]
 {¶ 29} R.C. section 2945.71(C)(2) provides that a person charged with a felony must be tried within 270 days after arrest. Where multiple indictments are issued against a defendant, the "speedy trial" timetable ascribed to the initial indictment applies to a subsequent indictment when the charges in the subsequent indictment arise from the same facts as the initial indictment and the state knew of the facts at the time the initial indictment was issued. State v. Adams (1989),43 Ohio St.3d 67, 68. The converse of this rule is also true. Where charges in a subsequent indictment stem from facts different than those underscoring the initial indictment, or where the state was unaware of these facts when the initial indictment was issued, the initial speedy trial deadline does not apply to the subsequent indictment. State v. Baker, 78 Ohio St.3d 108, 110,1997-Ohio-229.
 {¶ 30} After reviewing the record, we agree with the lower court's conclusion that appellant was not entitled to a dismissal of the charges in question on speedy trial grounds. Regarding the murder count, the trial court found that the state was unable to charge appellant under R.C. 2903.02(B) (felony murder) prior to obtaining new information through phone calls and other communications made by appellant while incarcerated. In his taped statement to police upon his apprehension in Texas, appellant asserted that the victim was not breathing after the struggle ended. However, during appellant's jailhouse communications, he maintained that the victim was still breathing after he strangled her and that she was still alive following the altercation. These assertions allowed the prosecution to proceed on a murder charge under R.C. 2903.02(B), without evidence of intent to kill, instead relying upon proof of appellant's intent to commit the underlying offense of felonious assault to support the felony murder conviction. See State v. Irwin, Hocking App. Nos. 03CA13, 03CA14, 2004-Ohio-1129, ¶ 15. Because these phone calls transpired after the initial indictment was issued, it follows that the information contained in the conversations was new information. Therefore, the murder charge in the second indictment was not subject to the speedy trial timetable of the initial indictment.
 {¶ 31} Regarding the tampering with evidence count at issue, the trial court concluded that the state could not have brought this charge prior to acquiring new information contained in letters written by appellant while incarcerated. At the hearing on appellant's motion to dismiss the second indictment, the prosecution admitted to having knowledge of certain tampering evidence at the time of the first indictment. The state knew that the victim's body had been moved from the murder scene. But, according to the prosecution, the state did not proceed on tampering charges in the initial indictment because it was not confident that there was sufficient evidence to prove the charge beyond a reasonable doubt.
 {¶ 32} Subsequently, the state discovered new information from a fellow inmate and from letters written by appellant while in jail that offered support for the tampering charge in question. Appellant admitted to removing evidence in addition to the body, including latex gloves and items of the victim's clothing, and to disposing of these items in a dumpster while en route to Texas. The state explained that these additional facts, combined with the removal of the body, provided further evidence of tampering to form a sound basis for the tampering count at issue. The state maintained that it would not have filed this tampering charge had it not discovered the additional evidence. It is evident that this information was not available to the state at the time of the initial indictment due to the fact that the communications took place after appellant was incarcerated. Therefore, the tampering charge at issue in the second indictment was not subject to the speedy trial timetable of the initial indictment.
 {¶ 33} Appellant's second assignment of error is overruled.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY IMPOSING CONSECUTIVE SENTENCES FOR TWO COUNTS OF TAMPERING WITH EVIDENCE."
 {¶ 36} Appellant insists that the trial court improperly imposed consecutive sentences on the two counts of tampering with evidence because the court relied upon sentencing statutes recently declared unconstitutional by the Ohio Supreme Court.
 {¶ 37} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court ruled that certain Ohio sentencing laws requiring judicial fact-finding prior to the imposition of nonminimum, consecutive, or maximum sentences are unconstitutional in light of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531. As a result of the high court's severance of the applicable provisions from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required.Foster at paragraph two of the syllabus. See, also, State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus.
 {¶ 38} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were applied be remanded for resentencing. Foster at ¶ 104. See, also, State v. Miller, Montgomery App. No. 21054,2006-Ohio-1138; State v. Howard, Hamilton App. No. C-050602,2006-Ohio-2093, ¶ 5-6; State v. Backs, Auglaize App. No. 2-05-44, 2006-Ohio-2145, ¶ 9. However, because appellant failed to allege any errors regarding his murder sentence, we reverse and remand appellant's sentence with respect to the tampering charges only. See State v. Saxon, 109 Ohio St.3d 176,2006-Ohio-1245 (rejecting the "sentencing package" doctrine and holding that "[a]n appellate court may modify or vacate only a sentence that is appealed by the defendant and may not modify or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense").
 {¶ 39} Appellant's third assignment of error is sustained as limited.
 {¶ 40} Having reviewed appellant's assignments of error, we reverse the trial court's judgment as to the consecutive sentences imposed for the two counts of tampering with evidence, and remand this matter for resentencing as to those two counts only in accordance with law and consistent with this opinion.
Young and Bressler, JJ., concur.
[1] The performance of appellant's initial trial counsel, whom he dismissed prior to sentencing, is the subject of this assignment of error. Appellant does not challenge the performance of the attorney he retained to replace his initial counsel.
[2] Appellant does not challenge the third count of the second indictment, which charged him with tampering with evidence based upon his solicitation of help from a fellow inmate to create a false document to implicate another person in the murder.