OPINION
{¶ 1} Defendant-appellant, Jeffrey Lee Conley, Sr., appeals his conviction and sentence in the Clermont County Common Pleas Court for grand theft.
 {¶ 2} On October 15, 2002, appellant entered into an agreement with Angela Greenwood to build her a house for $158,000 on a three-acre plot in Goshen Township, in Clermont County, Ohio.
The plot had been divided from a five-acre tract owned by Greenwood's son, James Shaw. Under the terms of the parties' agreement, which was memorialized in the form of a "Proposal" and "Acceptance of Proposal" drafted by appellant,[1] Greenwood was to open a $73,000 "escrow account" with Lowe's. Appellant was to be given permission to make draws against the account to purchase supplies and materials to construct the house. Greenwood was also to pay appellant $25,000 to begin construction and to cover permit costs. Appellant was to receive a draw of $25,000 after the house was "dried in," and another draw of $25,000 after he completed the electric, plumbing and insulation, and after the drywall was finished and "painted flat white." Appellant was to receive the $10,000 balance of the $158,000 purchase price when the house was completed, which appellant promised would be by July 4, 2003.
 {¶ 3} Greenwood signed the "Acceptance of Proposal" in the kitchen of her son's house in Clermont County. At that time, she gave appellant a check for $73,000 to open the escrow account at Lowe's in Wilmington, Clinton County, and a second check for $25,000 for start-up costs on the project.
 {¶ 4} In February 2003 and May 2003, Greenwood ordered Lowe's to cut off appellant's access to the escrow account after receiving receipts from the store indicating that items were being purchased on the account that were not supplies and materials to be used in the construction of her house. The items included two riding lawn mowers worth approximately $3,500 each; various tools, including a chainsaw and drill; cell phones and time cards for them; and a number of plants, shrubs and trees. On both occasions, Greenwood re-opened the account after appellant explained to her that Lowe's had gotten her account "mixed up" with several other accounts he had opened at the store, and after he assured her that he would straighten out the confusion.
 {¶ 5} Greenwood sent appellant a check for $25,000 on May 30, 2003. When she returned to the house in early June 2003, she saw that no progress had been made on the house since she sent appellant the $25,000 check. On July 11, 2003, appellant's son came to the house and took down appellant's builder's sign; when Greenwood asked him if her home was going to be finished, he told her that he did not know. On that same day, Greenwood attempted to contact appellant. When she was unable to do so, she contacted the Goshen Township Police Department.
 {¶ 6} On September 10, 2003, appellant was indicted for grand theft, pursuant to R.C. 2913.02(A)(2), a felony of the fourth degree.[2] In a bill of particulars filed in response to appellant's request, the state alleged that appellant "entered into a written contract with [Greenwood], for him to build her a home. As part of the contract to build, [Greenwood] placed $73,000 into an account at the Lowe's in Wilmington, Ohio. The items that were to be purchased by [appellant] from that account, were to be used in the construction of [Greenwood's] home. However, [appellant] made numerous purchases from that account that did not go towards the construction of [Greenwood's] new home."
 {¶ 7} At appellant's trial, the state presented the testimony of Greenwood and others, who related the facts set forth above. Greenwood's testimony established that at the time appellant quit work on the project, he had withdrawn all but approximately $4,000 of the $73,000 escrow account at Lowe's, but the house was left substantially incomplete. For instance, while the house's framing had been erected and a roof had been installed, many of the rooms were left unfinished, there was no siding on the house, and no electrical or plumbing work had been performed.
 {¶ 8} Appellant, testifying on his own behalf, indicated that he stopped working on the project after he and Greenwood had disagreements about the color of the shingles he had placed on the roof and about the type of siding that was to be used on the house. Despite Greenwood's testimony to the contrary, appellant asserted that he had made calls to Greenwood but "[s]he would not take a call back and try to work things out." He also testified that he considered the money that he spent from the escrow account for personal items unrelated to the construction of Greenwood's house as constituting part of his profits from the construction project. He explained that of the $73,000 in the Lowe's account that had been earmarked for supplies and expenses, he actually only needed $30,000 to construct the house, since he never had to pay full price for items he purchased at Lowe's, given his relationship with them; he viewed the remaining $43,000 as part of his profits.
 {¶ 9} The jury convicted appellant of grand theft, pursuant to R.C.2913.02(A)(2) and (B)(2), and the trial court sentenced him to five years of community control. In a subsequent hearing, the trial court ordered appellant to pay Greenwood $40,737.98 in restitution.
 {¶ 10} Appellant now appeals from his conviction and sentence and raises four assignments of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Appellant argues that his conviction for grand theft, pursuant to R.C. 2913.02(A)(2), was contrary to the manifest weight of the evidence because the state failed to demonstrate that he acted with the requisite purpose or intent to deprive Greenwood of her property. We disagree with this argument.
 {¶ 14} In determining whether a conviction is contrary to the manifest weight of the evidence, an appellate court must review the entire record, weighing the evidence as well as all reasonable inferences that can be drawn therefrom, and considering the credibility of the witnesses, to determine whether the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 389, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 15} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "`The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.'" Statev. Johnson (1978), 56 Ohio St.2d 35, 38, quoting State v. Huffman
(1936), 131 Ohio St. 27, paragraph four of the syllabus.
 {¶ 16} A review of the surrounding facts and circumstances of this case demonstrates that there was sufficient, credible evidence presented to permit the jury reasonably to find that appellant acted with the requisite purpose or intent to deprive Greenwood of her property by knowingly obtaining or exerting control over a significant portion of the $73,000 escrow account beyond the scope of her express or implied consent. Greenwood's testimony showed that appellant had told her that the $73,000 that she was required to place in the Lowe's account under the terms of the parties' agreement "would cover all the materials and supplies" for her house. According to Greenwood's testimony, appellant never told her that he would be purchasing items other than materials and supplies needed for the construction of the house. According to his own testimony, appellant did not actually need $73,000 to construct the new house, as he had represented to Greenwood.
 {¶ 17} From the very beginning of the project, appellant intended to keep $43,000 of the $73,000 as his profit. When Greenwood questioned appellant about his unauthorized purchases, he told her that Lowe's had mixed up her account with other accounts he had with them; it was not until later that appellant claimed that he considered part of the funds in the account to constitute a portion of his profits. Appellant's deceptive response to Greenwood's questions regarding his use of the funds in the escrow account provided clear demonstration of his purpose or intent to wrongfully deprive Greenwood of her property.
 {¶ 18} Furthermore, the evidence presented demonstrated that appellant obtained or exerted control over the funds in the account beyond the scope of Greenwood's express or implied consent since the scope of her consent was limited to his using the funds in the escrow account to purchase materials and supplies for the construction of her new house. The evidence showed that appellant converted a substantial portion of the funds to his own use and purchased items with those funds that were never used in the construction of Greenwood's new house.
 {¶ 19} Appellant argues that his purpose or intent to deprive Greenwood of a significant portion of the funds in the $73,000 escrow account was negated by the fact that he performed a "significant amount" of construction on the new house. However, we find this argument unpersuasive since it ignores the indisputable fact that appellant left Greenwood's house substantially incomplete. Among other things, appellant failed to perform any electrical or plumbing work in the new house, the siding of the house was never installed, and many of the rooms of the house were never completed. The amount of work appellant did complete was insufficient to negate a finding that he acted with purpose or intent to deprive Greenwood of her property.
 {¶ 20} In support of his argument, appellant relies primarily on Statev. Coleman, Champaign App. No. 2002 CA 17, 2003-Ohio-5724, where the court overturned three of the defendant's four convictions for either theft or grand theft on grounds that they were against the manifest weight of the evidence. In each of the three instances where the court overturned the defendant's conviction, the court noted that the defendant had performed either a "significant amount" of the work promised or had "partially perform[ed]" the work promised. The court upheld the defendant's conviction where he had not performed any of the work promised. Appellant urges us to find his conviction to be against the manifest weight of the evidence, as in Coleman, since this is not an instance where he failed to perform any of the work promised but, instead, performed a "significant amount" of the work he had contracted to perform. We decline to do so.
 {¶ 21} In Coleman, the court overturned one of the defendant's convictions after finding that the defendant had performed "a significant amount of work and had obtained the materials to complete the job." (Emphasis added.) The court also found that the state had difficulty in establishing that the defendant took in excess of $5,000 from his alleged victim. Here, by contrast, the evidence did not show that appellant had obtained all of the material necessary to complete the job, and appellant has never argued that the state failed to prove that he took in excess of $5,000 from Greenwood.
 {¶ 22} With regard to the second conviction overturned in Coleman, the court found that the defendant did not perform the roofing task as promised because the roofing material had not been sent, but the court found that "the mere fact that [the defendant] attempted to order" the roofing material indicated that he intended to perform the work. The court also noted that the homeowner attempted to cancel his contract with the defendant; that the defendant had executed a promissory note for $5,000 to pay back the aggrieved homeowner; and that defendant offered to start the roofing work, but the homeowner no longer wanted him to perform the work. The same circumstance was present in the third instance where the defendant's conviction was overturned, i.e., the aggrieved homeowners told the defendant that they no longer wanted him to perform the work.
 {¶ 23} The above facts and circumstances are substantially different from the ones present here where, among other things, Greenwood's testimony established that it was appellant who walked off the job. While appellant testified to the contrary, the jury was free to believe all, part or none of what any witness had to say regarding the facts and circumstances in this case. State v. Nichols (1993), 85 Ohio App.3d 65,76. It is apparent that they chose to believe Greenwood rather than appellant, and it does not appear that they "lost their way" in doing so.
 {¶ 24} Appellant's first assignment of error is overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "INSUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT THE FINDING OF PROPER VENUE IN CLERMONT COUNTY, OHIO."
 {¶ 27} Appellant argues that venue was not proper in Clermont County because "[a]ll of the alleged unauthorized purchases were made at the Lowe's store in Clinton County[,]" and while "[t]he $73,000 check for supplies was given to [him] in Clermont County[,] * * * the check was not unlawfully taken." We disagree with this argument.
 {¶ 28} "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C.2901.12(A). "When the offense involved the unlawful taking or receiving of property or the unlawful taking or enticing of another, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed." R.C. 2901.12(C).
 {¶ 29} In this case, there was sufficient evidence presented to allow the jury to determine that appellant wrongfully intended to deprive Greenwood of at least a portion of the purchase price of the house at the time she tendered checks of $73,000 and $25,000 to appellant in Clermont County. Cf. State v. Clapp (June 29, 1987), Fayette App. No. CA87-01-001 (although defendant took truck in one county, evidence showed that he did not formulate intent to wrongfully deprive victim of that truck until he was in another county; hence, venue was not proper in county from which he initially took truck). The evidence showed that appellant told Greenwood that the supplies and materials for the house would cost $73,000, but he later admitted that the supplies and material he needed to construct the house only cost $30,000 and that he intended to keep the remaining $43,000 as his profit. He then converted a substantial amount of the funds in the escrow account to pay for personal items that were never used in the construction of Greenwood's home.
 {¶ 30} Furthermore, R.C. 2901.12(G) provides that "[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions." To the extent that it cannot be reasonably determined in which county appellant formulated his intent wrongfully to deprive Greenwood of money, i.e., Clermont County or Clinton County, appellant's trial was permissible in either county. R.C. 2901.12(G).
 {¶ 31} Appellant's second assignment of error is overruled.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "APPELLANT'S CONVICTION WAS THE RESULT OF HIS TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE."
 {¶ 34} Appellant argues that his counsel was constitutionally ineffective for not objecting to questions from the prosecution regarding whether he declared certain items as income on his tax returns. He asserts that such questions violated the "best evidence" rule, since his tax returns, rather than his testimony under cross-examination provided the best evidence of those facts. We disagree with this argument.
 {¶ 35} To establish a claim of ineffective assistance of counsel, a criminal defendant must show that his counsel's performance was objectively unreasonable and that, but for his counsel's deficient performance, the outcome of his trial would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. A failure to make either showing will doom the defendant's claim. Id.
 {¶ 36} In this case, appellant cannot meet either prong of theStrickland standard for ineffective assistance of counsel. First, contrary to what appellant asserts, defense counsel may well have had strategic reasons for not raising a best evidence objection, assuming that such an objection would have been otherwise proper, since counsel may have had sound tactical reasons for not wanting the jury to see appellant's income tax returns admitted into evidence. Second, counsel's raising the objection would not have changed the outcome of appellant's trial, given the evidence that was presented against him at trial.
 {¶ 37} Appellant's third assignment of error is overruled.
 {¶ 38} Assignment of Error No. 4:
 {¶ 39} "THE COURT FAILED TO PROPERLY INSTRUCT THE JURY REGARDING THE OPINION OF A LAYPERSON."
 {¶ 40} Appellant argues that the trial court committed plain error when it failed to give the jury an instruction regarding the "opinion of a layperson," with respect to Greenwood's testimony concerning the amount of work that had, or had not, been done on the construction of the house after she had sent him a $25,000 check in May 2003. However, the failure to give this instruction, assuming it was error, clearly would not have changed the outcome of appellant's trial. State v. Long (1978),53 Ohio St.2d 91.
 {¶ 41} Appellant's fourth assignment of error is overruled.
 {¶ 42} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] {¶ a} The "Proposal" and "Acceptance of Proposal" stated:
{¶ b} "Conley Builders Developers "Proposal
{¶ c} "6695 St. Rt. 729 "Sabina, Ohio 45169 "* * *
{¶ d} "October 14, 2002
{¶ e} "Angela Greenwood
"2060 Cedarville Rd [sic] Goshen, Ohio "* * *
{¶ f} "Construct New Home on newly divided 3 acre building lot. Divided from lot at 2060 Cedarville Rd. New lot know [sic] as 2055 Cedarville Rd. Division by McCarty Associates:
{¶ g} "Construct 32X64 home with 22X22 Garage per plans, with vinyl siding dimensional shingles on the 7/12-pitch roof. Porch with concrete floor will extend 3 sides of home; front, right side back. Back porch stops at end of master bedroom. Two walkout window wells, 1 dormer at entry door area. Master bath layout will be adjusted to locate whirl pool [sic] tub, stool 48" vanity.
{¶ h} "Kitchen will contain Cabinet pack cabinets, flooring to be pergo type from Lowes [Sic.]
"Gas Furnace 90% EFI 3.5 ton air conditioning. "Free Standing Gas fireplace. (RL purchase) "Water Tap "Septic System "Electric will all be run "Drive will be stoned "Permits will be pulled [sic] in landowners [sic] name.
{¶ i} "The above work to be preformed [sic] for $158,000.00 with payments as follows.
{¶ j} "Angela Greenwood will purchase Home package from Lowes, Wilmington Ohio (Roy Clark sales rep.) package [sic] to be delivered as needed. $73000.00 [sic]
{¶ k} "Contractor to receive $25000.00 [sic] to begin construction 
cover permits [sic]
{¶ l} "Contractor to receive $25000.00 [sic] draw after house is dried in.
{¶ m} "Contractor to receive $25000.00 [sic] draw after completing electric, plumbing, insulation, drywall is finished painted flat white. "Contractor to receive $10,000.00 balance when complete.
{¶ n} "Respectfully Submitted: Jeff Conley
"Per Conley Builders Developers
"Acceptance of Proposal
 {¶ o} "The above prices, specifications conditions are satisfactory and hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.
{¶ p} "Accepted:
"Signature: /s/ [Angela Greenwood]
{¶ q} "Date: 10-15-02
"Signature: /s/ [Jeffrey L. Conley]"
[2] {¶ a} R.C. 2913.02 states, in pertinent part:
{¶ b} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
{¶ c} "* * *
{¶ d} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]
{¶ e} "* * *
{¶ f} "(B)(1) Whoever violates this section is guilty of theft.
{¶ g} "(2) * * * * If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree."