OPINION
{¶ 1} Defendant-appellant, Joseph Piesciuk, appeals his conviction and sentence from the Butler County Court of Common Pleas for the offenses of theft by deception, money laundering, and engaging in a pattern of corrupt activity. We affirm appellant's conviction, but affirm in part and reverse in part appellant's sentence as it pertains to the restitution order, and remand for further proceedings.
 {¶ 2} Appellant was indicted on multiple counts in connection with his role as president of the Original Home Improvement Center ("OHI"), a remodeling company located in Middletown, Ohio. The state alleged that, on or about April 1, 2000 through November 1, 2000, appellant used his company to take money from multiple homeowners by securing numerous remodeling projects, and then failed to commence the project, or did not perform the services as promised, and left projects incomplete, and did not refund any of the customers' monies. Other charges involve appellant's failure to pay subcontractors for work performed on certain construction projects during the same period.
 {¶ 3} A jury found appellant guilty of 13 counts of theft by deception, eight counts of money laundering, and one count of engaging in a pattern of corrupt activity. The trial court sentenced appellant to 21 years in prison, and ordered restitution. Appellant appeals his conviction and sentence, setting forth five assignments of error on appeal.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "APPELLANT'S CONVICTIONS ARE BASED UPON INSUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 7} Appellant's first argument in this assignment of error challenges the theft by deception convictions.
 {¶ 8} The theft statute, R.C. 2913.02, states, in part, that no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) [b]y deception.
 {¶ 9} The term "deprive" in the statute means to do any of the following: withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration; dispose of property so as to make it unlikely that the owner will recover it; accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration. R.C. 2913.01(C)(1)-(3).
 {¶ 10} A person acts "purposely" when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A). The term "knowingly," for the requirement of "knowingly obtain or exert control," means that a person, regardless of purpose, is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
 {¶ 11} R.C. 2913.01(A) defines "deception" as knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.
 {¶ 12} Appellant specifically argues that there was insufficient evidence of his intent to not perform the services at the time he received payments from the homeowners, and insufficient evidence that he did not intend to pay the subcontractors.
 {¶ 13} Criminal intent is determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts. State v.Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168.
 {¶ 14} Construing the evidence most favorably for the state, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. There was sufficient evidence in the record for the jury to find that appellant made specific promises or represented certain facts to induce homeowners to commence payment or to continue to make payments while appellant had no intent to fulfill the promises, but possessed the intent to deprive them of their property. See State v. Edmondson, 92 Ohio St.3d 393, 398, 2001-Ohio-210
(state must prove that the accused engaged in a deceptive act to deprive the owner of possession of property or services, and that the accused's conduct creating a false impression actually caused the victim to transfer property to the accused); State v. Wright, Erie App. No. E-03-054, 2004-Ohio-5228; State v. Karns (May 20, 1992), Hamilton App. No. C-900919.
 {¶ 15} While some of the homeowners testified that they contacted appellant because his company's marketing claimed that it had been in the remodeling business for several decades, appellant did not inform the potential customers that he had just purchased the established business on or around April 1, 2000.
 {¶ 16} Witnesses testified that appellant requested initial or subsequent payments by promising them specific work would be completed or certain materials ordered, but those promises were not fulfilled and no monies were refunded. Witnesses also testified that they were unsuccessful in repeated attempts to contact appellant for an adequate explanation for unfinished projects, or, if they reached appellant, he would make additional promises that were not realized. See State v.Conley, Clermont App. No. CA2004-07-053, 2005-Ohio-3509 (contractor-defendant's deceptive response to victim's questions about project provided clear demonstration of intent to deprive victim); Statev. Wright, 2004-Ohio-5228 at ¶ 38 (sufficient to show accused acted with purpose to deprive when accused took money, failed to return calls, missed appointments, and misrepresented job completion and status of business).
 {¶ 17} Construing the evidence most favorably for the state, there was sufficient evidence for the jury to find that appellant committed thefts by deception when he employed subcontractors to do certain work, but did not pay the subcontractors for the work performed on the projects. SeeState v. Edmondson, 92 Ohio St.3d at 398; see, e.g., State v. Jacobozzi
(1983), 6 Ohio St.3d 86, 89-90; cf. State v. Belt, Union App. No. 14-03-36, 2004-Ohio-1511, ¶ 22 (state presented evidence that possible money problems could have been accused's motivation for the theft).
 {¶ 18} We are not persuaded that appellant's conduct of commencing work on most of the renovation projects prohibits the jury from finding that appellant possessed the necessary intent to commit theft. Accordingly, we find there was sufficient evidence for the jury to find appellant guilty of 13 counts of theft.
 {¶ 19} Appellant next argues that the state failed to present sufficient evidence to meet the statutory requirements for money laundering.
 {¶ 20} The pertinent portion of R.C. 1315.55 states that no person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity. R.C. 1315.55(A)(1). A "transaction" includes any sale, loan, deposit, withdrawal, or payment. R.C. 1315.51(L). "Unlawful activity" is defined as a criminal offense, R.C. 1315.51(O), and in this case would be the theft by deception charges. The term "corrupt activity," in pertinent part, is defined as engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following: * * * theft * * *, combination of R.C. 2923.31(I)(2)(c) offenses, with a value exceeding $500. R.C. 2923.31(I)(2)(c).
 {¶ 21} Construing the evidence most favorably for the state, we find that sufficient evidence was presented that appellant committed money laundering. R.C. 1315.55. The state presented sufficient evidence from which a rational jury could find that appellant was not a passive recipient of funds from the thefts and could find that the funds he received were, in turn, used in furtherance of the unlawful activity. Sufficient evidence was adduced to show that appellant deceived customers to obtain their money and deceived subcontractors so that they would perform certain work, but then used the customers' monies and the subcontractors' efforts to promote and further his unlawful activity. SeeUnited States v. Haun (C.A.6, 1996), 90 F.3d 1096, 1100 (in reviewing federal statute similar to Ohio money laundering statute, court found that defendant took a leadership role in fraudulent activity by cashing and depositing checks into company's account, showing intent to promote prior, ongoing and future unlawful activity); see, also, State v. Rose,
Hamilton App. No. C-040092, 2004-Ohio-7000; see United States v.Pressley (Sept. 18, 2001), C.A.6 No. 99-6070, 99-6071, 20 Fed. Appx. 331, 334 (sufficient evidence of money laundering where defendants knowingly deposited proceeds from investors into bank accounts and expended those proceeds on various items, including an office from which they promoted their scheme).
 {¶ 22} Accordingly, there was sufficient evidence for the jury to find appellant guilty of money laundering.
 {¶ 23} Appellant also challenges the sufficiency of evidence for his conviction of engaging in a pattern of corrupt activity under R.C.2923.32(A)(1). This portion of R.C. 2923.32 states, in part, that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." A "pattern of corrupt activity" is present, according to R.C.2923.31(E), when there are two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. R.C. 2923.31(E) requires that at least one of the incidents forming the pattern be a felony and that the incidents not be more than six years apart.
 {¶ 24} "Enterprise," as used in the Ohio statute, "includes any individual, sole proprietorship, partnership, limited partnership, corporation, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). "Corrupt activity" was previously defined and includes, as pertinent here, conduct constituting money laundering and certain theft offenses. R.C. 2923.31(I).
 {¶ 25} Appellant argues that the underlying offenses to engaging in corrupt activity should be reversed and therefore, this conviction for Count 34 cannot stand. Based upon our finding that there was sufficient evidence for a jury to find appellant guilty of the thefts and money laundering counts, and upon review of the elements of the crime of engaging in a pattern of corrupt activity, sufficient evidence was presented for the jury to find appellant guilty of engaging in a pattern of corrupt activity. See State v. Hicks, Butler App. No. CA2002-08-198, 2003-Ohio-7210, ¶ 28-37.
 {¶ 26} Appellant further argues under his first assignment of error that all of his convictions were contrary to the manifest weight of the evidence.
 {¶ 27} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 28} We have carefully reviewed the entire record, which included approximately eight full days of trial testimony. We are mindful of appellant's challenges on the multiple counts of the three crimes charged. We are also aware of the conflicting testimony presented.
 {¶ 29} In the state's case-in-chief, the jury heard customers testify that appellant secured money from them with promises to perform specific functions or order certain materials, which did not occur. Other customers testified that appellant promised them that subcontractors were being paid, but those subcontractors eventually threatened to file or filed liens on the customers' property because appellant had not paid them.
 {¶ 30} There was testimony from one of appellant's employees that the employee did not receive and was not the person who cashed many of the checks that were written to him on the OHI account. The employee testified that he did not know who received those funds.
 {¶ 31} Employee Amy Parker testified that appellant asked her to cash customer checks written to her and give appellant the money. At least one customer testified that appellant asked her to write one of the payment checks to Amy Parker, whom appellant said was his wife.
 {¶ 32} Parker, who was not appellant's wife and who was employed briefly as the bookkeeper for OHI, testified that she attempted to keep track of OHI's single bank account during the few months she was employed there. Parker testified about appellant's personal and business spending from the bank account, and his frequent use of debit or automatic teller machine withdrawals. Parker testified that she cautioned appellant to curtail spending so that OHI could meet its obligations, but appellant responded that she need not worry because he would "go out and write another contract." Parker stated that appellant characterized his success in obtaining an additional payment from one customer as "taking candy from a baby."
 {¶ 33} One customer who made an initial payment, but whose remodeling project was never commenced, testified that she was contacted by an employee of OHI who told her on two occasions that work would begin as soon as appellant recovered from a heart attack.
 {¶ 34} The jury also heard testimony about customers' repeated attempts to contact appellant to inquire about unfinished work projects, and subcontractors doing the same to collect payments. Evidence was presented that OHI's bank account was without sufficient funds to cover obligations within a few months after appellant assumed control over the company. There was testimony that appellant continued to contract for additional renovation projects and continued to take payments from customers while previous projects languished and the bank account carried insufficient funds.
 {¶ 35} Ray Carrozza testified in appellant's case-in-chief that he was the individual who sold the remodeling business to appellant and who worked with OHI for a few months thereafter. Carrozza testified that it was not unusual when he ran the business to take a customer's down payment and use it to pay previously existing bills, or to buy himself a car. According to Carrozza, "I got to get it from somewhere, just like working."
 {¶ 36} Carrozza testified that OHI's problems could be attributed to the fact that OHI was working on 20-25 remodeling jobs at the same time during the summer of 2000. Carrozza indicated that he would only handle a maximum of six jobs at one time when he ran the company.
 {¶ 37} Appellant testified that he was struggling to keep the company afloat financially, hindered by having his business records stolen in an August 2000 office break-in. Appellant told the jury that he never promised customers that he would perform specific functions or secure specific materials in exchange for their payments, and that he always intended to pay subcontractors who deserved payment.
 {¶ 38} Appellant testified that despite the state's attempts to prove otherwise, most of the OHI bank account activity was related to the business in some fashion. Appellant stated that financial and construction problems resulted from employee incompetence, and from poor workmanship by subcontractors he hired.
 {¶ 39} Appellant indicated that his mother's death in August 2000 and his incarceration in mid September through October 2000 also contributed to his problems. Appellant did not testify that he ever suffered a heart attack. Appellant told the jury that he turned the business over to third parties and left town on or about the end of 2000.
 {¶ 40} A Columbus, Ohio law enforcement officer testified that his agency was made aware of outstanding warrants for appellant and located appellant at an apartment complex in Columbus in 2003. The officer extensively detailed for the jury how appellant attempted to flee and resisted when they arrested him.
 {¶ 41} According to the officer, appellant was found to be carrying various forms of identification and a credit card belonging to someone else, along with several warehouse club cards that displayed appellant's photograph, but carried a name or names other than appellant's.
 {¶ 42} As we previously stated, appellant presented evidence, which he argues, refuted or explained the state's evidence. However, the jury was free to believe all, part, or none of the testimony of any of the various witnesses at trial. State v. Antill (1964), 176 Ohio St. 61, 67. After applying the applicable manifest weight standard, we find that the jury clearly did not lose its way and did not create such a miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's first assignment of error is overruled.
 {¶ 43} Assignment of Error No. 2:
 {¶ 44} "ERRONEOUS JURY INSTRUCTIONS REQUIRE REVERSAL OF THE THEFT BY DECEPTION, MONEY LAUNDERING, AND ENGAGING IN A PATTERN [sic] CONVICTIONS[.]"
 {¶ 45} Appellant argues that the trial court essentially directed a verdict on the theft counts because it instructed the jury in the following manner during its instruction for the money laundering counts: "In Count ____, [appellant] is charged with money laundering. The state has introduced evidence that [appellant] took money from [victim] by deception. Before you can find the defendant [appellant] guilty of money laundering in this count, you must find the defendant guilty of theft by deception from [victim] * * *."
 {¶ 46} First, we note that appellant repeatedly voiced objections to the jury instructions, and even filed written objections that incorporated his written proposed jury instructions. Appellant told the trial court that he was objecting to "everything that is not included if it's not in my preliminary instructions." However, we cannot locate any objection in the record that informed the trial court in any manner that its chosen language was "directing a verdict" on the theft by deception charges in the money laundering instructions.
 {¶ 47} When an appellant fails to object to a jury instruction with the trial court below, the instruction is reviewed for plain error. Statev. Underwood (1983), 3 Ohio St.3d 12, 13, and syllabus. In other words, the question is whether the outcome of the trial would clearly have been different, but for the alleged error. Id., syllabus.
 {¶ 48} We are not convinced that the language used by the trial court directed a verdict on the theft counts. While the trial court could have stressed that the evidence alleged a theft by deception, we find that the trial court properly charged the jury on its responsibilities. The trial court told the jury what it must determine before it could find appellant guilty of a theft count. Further, in its money laundering instruction, the trial court stated to the jury that, "* * * unless you find the defendant guilty of the count of theft by deception you cannot find the defendant guilty of money laundering. You understand that is the prerequisite to go to the money laundering count, you have to make a determination as to the theft by deception. All of you understand that."
 {¶ 49} We reject appellant's assertion that the instruction informed the jury that the trial court found evidence of theft. The trial court instructed the jury that it should disregard any statement or action that it may consider an indication of the trial court's view, and, coupled with the jury instructions given, we find no error and no plain error in this instruction.
 {¶ 50} Appellant argues that the money laundering instruction was also incorrect because the trial court's instructions did not require the jury to find that the deposits from the alleged thefts were accomplished with the purpose of furthering the commission of corrupt activity. The language with which appellant alleges error is the following: "* * * committed the offense of money laundering by depositing the proceeds of this theft by deception in his bank account or by otherwise acquiring or disposing of such proceeds with the purpose of furthering the commission of corrupt activity."
 {¶ 51} First, we note that the offending portion of this instruction matches the jury instructions proposed by appellant before trial.[1] As previously stated, appellant repeatedly communicated his objections to the jury instructions, but did not contest this specific wording. While we do not intend to split hairs on the objection issue, had the perceived problems with this language been brought to the trial court's attention, the trial court would have had the opportunity to affirm or change its word selection accordingly.
 {¶ 52} Secondly, we note that the trial court began its instructions by providing the jury with the definition of money laundering, which followed the language of the money laundering statute. See R.C. 1315.55. After reviewing the language challenged by appellant, we find that the jury was properly instructed that it must find that appellant acted with the purpose of furthering the commission of corrupt activity. There was no error, plain or otherwise, in the trial court's instruction on this issue.
 {¶ 53} The final two sub-issues under this assignment of error were clearly raised by appellant with the trial court below. Appellant argues that the trial court erred when it failed to instruct the jury that the intent to steal had to be present when the money was received for a finding of guilty on the theft offenses.
 {¶ 54} The trial court's instructions on the elements of theft by deception comported with the Ohio Jury Instructions and the theft statute. We find no error by the trial court in this instruction. SeeState v. Marten (1993), 90 Ohio App.3d 338, 343. (Ohio Jury Instructions are recommended instructions based primarily upon case law and statutes, crafted by eminent jurists to assist trial judges with correctly and efficiently charging the jury as to the law applicable to a particular case).
 {¶ 55} Appellant's final argument challenges the trial court's refusal to use federal jury instructions or federal case law to instruct the jury on the offense of engaging in a pattern of corrupt activity. We have reviewed the instructions and find that they comport with the language of the Ohio statute and the various corresponding definitions required. See R.C. 2923.32 and R.C. 2923.31. Further, appellant has failed to indicate how the instructions given were erroneous. While the full extent of the trial court's comments are not clear, the trial court stated on the record that it was concerned about confusing the jury on the instructions for the offense. We cannot say that the trial court erred in its decision to present the jury instructions as reflected in the record. Accordingly, appellant's second assignment of error is overruled.
 {¶ 56} Assignment of Error No. 3:
 {¶ 57} "THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO A PRISON SENTENCE, NON-MINIMUM PRISON SENTENCE, AND CONSECUTIVE SENTENCES BASED ON FACTS NOT FOUND BY THE JURY."
 {¶ 58} Appellant first argues that the trial court erred in relying on the presentence investigation report ("PSI") because it contained inaccuracies pertaining to restitution amounts. We see no reason to overturn the sentence for this reason. Appellant disputes the restitution amounts listed in the PSI. That does not necessarily render them inaccurate. In any event, the trial court indicated that it was present for and well-aware of the evidence adduced at trial in regard to restitution.
 {¶ 59} Appellant next requests vacation of his sentence because of the "disparity" in his sentence from a similar situation in the case of Statev. Hicks, Butler App. No. CA2002-08-198, 2003-Ohio-7210. We disagree. Consistency in sentencing, per R.C. 2929.11(B), accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. State v. Hickman, Stark App. No. 2003-CA-00408, 2004-Ohio-6760, ¶ 104 (task of appellate court is to examine the available data, not to determine if the trial court has imposed a sentence that is "in lockstep" with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice). "Although offenses may be similar, distinguishing factors may justify dissimilar sentences." Id. at ¶ 104, quoting State v. Ryan, Hamilton App. No. C-020283, 2003-Ohio-1188, ¶ 9-12.
 {¶ 60} After reviewing the record, we find that appellant's sentence was commensurate with the seriousness of the offender's conduct and the impact on the victims, and was consistent with sentences for similar crimes. State v. Stern (2000), 137 Ohio App.3d 110, 115.
 {¶ 61} Appellant next advances an unsupported assertion that he never previously served time in prison and, therefore, the trial court erred by justifying the implementation of sentence with the finding that appellant had previously served a prison term.
 {¶ 62} R.C. 2901.04 requires that we strictly construe against the state and liberally construe in favor of the accused sections of the Revised Code dealing with offenses and penalties. R.C. 2929.14(B) indicates, in pertinent part, that the trial court shall impose the shortest prison term for the offense unless one or more of the following applies: appellant had previously served a prison term. R.C. 2929.14(B)(1).
 {¶ 63} "Prison" is defined in R.C. 2929.01(BB) to mean "a residential facility used for the confinement of convicted felony offenders that is under the control of the department of rehabilitation and correction but does not include a violation sanction center * * *." "Prison term" includes: a stated prison term; a term in a prison shortened by the sentencing court for listed early release mechanisms; a term in prison extended by bad time imposed or imposed for a violation of post release control. R.C. 2929.01(CC)(1)-(3).
 {¶ 64} There was evidence in the record to show appellant's extensive prior criminal record in Ohio and in Pennsylvania, and an indication in the PSI that appellant previously served a term in a Pennsylvania prison.
 {¶ 65} We note that appellant did not contest or object to the trial court's statements at the sentencing hearing that appellant had previously served a prison term. It was incumbent upon appellant and his counsel to dispute the finding that appellant had previously served a prison term so that the trial court could have the opportunity to further explore or correct the issue. Having failed to call the issue to the trial court's attention, we review the finding for plain error. See Statev. Cook, 83 Ohio St.3d 404, 426, 1998-Ohio-291 (plain error does not exist unless it can be said that, but for the error, the outcome clearly would have been otherwise); State v. Long (1978), 53 Ohio St.2d 91, paragraph three of syllabus (notice of plain error pursuant to Crim.R. 52[B] must be taken with the utmost caution, only under exceptional circumstances, and only to prevent a manifest miscarriage of justice); see State v. Combs, Butler App. No. CA2000-03-047, 2005-Ohio-1923, ¶ 7.
 {¶ 66} Appellant's PSI indicated that he was convicted of burglary in Pennsylvania in 1988 and that he was sentenced to six months to 23-months in the Dauphin County prison, but paroled with conditions several days after he was sentenced. The offense of burglary at the time was classified as a felony of the first degree. 18 Pa. C.S.A. § 3502. A first-degree felony could be punishable by imprisonment of more than ten years. 18 Pa. C.S.A. § 106. Convictions for "misdemeanors" of the first, second, and third degree can result in "imprisonment," the maximum of which is not more than five, two, and one year, respectively. 18 Pa. C.S.A. § 106.
 {¶ 67} The Pennsylvania sentencing scheme also indicated that persons sentenced to maximum terms of five or more years shall be committed to the Bureau of Correction for confinement, that individuals sentenced to terms of two years or more, but less than five years could be committed to the Bureau of Correction or to a county prison within the jurisdiction of the court, and those individuals sentenced to maximum terms of less than two years shall be committed to a county prison, except in locations where state correctional facilities are specially designated as available and then those individuals may be imprisoned in the state facilities.42 Pa. C.S.A. § 9762.
 {¶ 68} While the Pennsylvania statutes at the time varied from Ohio's scheme, there was some evidence in the record for the trial court to find that appellant served a prison sentence. The inconsistency with both the sentencing schemes and nomenclature between the two states made it imperative that appellant bring those issues to the trial court's attention, particularly if appellant had not previously served a prison term as he now argues. Upon review of the record, we cannot say that the outcome would clearly have been otherwise and find no plain error in the trial court's finding that appellant had previously served a prison term.
 {¶ 69} Finally, relying upon Blakely v. Washington, 542 U.S. 296,124 S.Ct. 2531, appellant contends that his sentence should be overturned for the reason that the trial court made certain findings at sentencing that were properly reserved for the jury. We overrule appellant's argument as it pertains to the jury findings, based upon the authority ofState v. Combs, Butler App. No. CA2000-03-047, 2005-Ohio-1923.
 {¶ 70} Accordingly, appellant's third assignment of error is overruled.
 {¶ 71} Assignment of Error No. 4:
 {¶ 72} "THE COURT COMMITTED PREJUDICIAL ERROR IN DETERMINING THE AMOUNT OF RESTITUTION AWARDED TO THE VICTIMS."
 {¶ 73} R.C. 2929.18(A)(1) authorizes a trial court to order restitution to the victim of the offender's crime in an amount based on the victim's economic loss.[2] R.C. 2929.01(M) defines "economic loss" in part as "any economic detriment suffered by a victim as a result of the commission of a felony." The record must contain sufficient evidence for the court to ascertain the amount of restitution to a reasonable degree of certainty. State v. Williams, Butler App. No. CA2002-09-214, 2003-Ohio-4453, ¶ 31. The amount of restitution must bear a reasonable relationship to the loss suffered. Id.
 {¶ 74} The trial court does not need to conduct a hearing to ascertain the reasonableness of the restitution if there is enough evidence in the record to substantiate the relationship between appellant's criminal conduct with the amount of the victim's loss. State v. Borders, Clermont App. No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. In determining whether the trial court's order of restitution is supported by the evidence, a reviewing court must apply a manifest weight of the evidence standard of review. State v. Clemons, Montgomery App. No. 20206, 2005-Ohio-436, ¶ 10-13.
 {¶ 75} At the beginning of the sentencing hearing, appellant contested some of the restitution figures listed in the PSI, and therefore, we find appellant sufficiently raised the issue of restitution in the court below.
 {¶ 76} We have reviewed the restitution amounts now contested by appellant on appeal. The record contains sufficient evidence for the trial court to ascertain most of the restitution amounts to a reasonable degree of certainty. However, we agree with appellant's contention that the record before us is not sufficient to affirm the restitution amounts for the Bierly and Miller victims. Further, the record does not support the award of $2,500 in restitution for the Rose subcontractor. The Rose subcontractor received full payment of the lien at issue from the property owner, and therefore, it appears that no restitution is owed to subcontractor Rose. Further, it does not appear that the trial court considered the fact that $3,680 was paid to subcontractor Kramer by the property owner to release that lien.
 {¶ 77} Accordingly, the amount of restitution for subcontractor Rose, subcontractor Kramer, and for the Bierly and Miller victims is reversed and remanded for further consideration by the trial court.
 {¶ 78} Appellant's assignment of error is sustained only as to the aforementioned victims and to the extent outlined above. The remaining portions of the assignment of error are overruled.
 {¶ 79} Assignment of Error No. 5:
 {¶ 80} "THE COURT ERRED IN ALLOWING THE PROSECUTION TO USE OTHER ACT AND NON RELEVANT EVIDENCE TO SHOW CHARACTER AND CONFORMITY THROUGHOUT THE TRIAL."
 {¶ 81} Appellant argues that he was prejudiced by the admission of other-acts testimony at trial that appellant drank alcohol or made debit card purchases at bar-restaurants.
 {¶ 82} The admission of evidence is within the sound discretion of the trial court. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 79. Evidence of an accused's other acts is admissible only when it tends to show one of the material elements of the charged offense and is relevant to the proof of guilt. State v. Curry (1975), 43 Ohio St.2d 66, 68-69.
 {¶ 83} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but may be used for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).
 {¶ 84} In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. R.C. 2945.59.
 {¶ 85} The state argues that the testimony in question was relevant evidence of appellant's intent and plan to take customers' money to spend for his own purposes, i.e., bar-restaurant bills, child support payments, and not for the customers or subcontractors.
 {¶ 86} We have reviewed the record and find that the evidence was not admitted to improperly impugn appellant's character. The evidence admitted was offered to show appellant's motive, intent, scheme or plan to use customer's funds for his own purposes, rather than for the promised commencement or completion of work projects. The trial court did not abuse its discretion in its decision to admit the evidence.
 {¶ 87} Appellant next argues that he was prejudiced when exhibits that had been admitted into evidence on counts that were subsequently dismissed were provided to the jury in its deliberation. This argument is problematic. We cannot locate any reference in the record regarding what exhibits the jury may have possessed and considered during their deliberations.
 {¶ 88} According to the transcript, the trial court completed its reading of the jury instructions and told the jury to return the next morning to begin deliberations. The trial court informed the jury that the attorneys, the trial court and its bailiff would be spending the next hour making sure "that the only exhibits you get are the ones that were properly admitted into evidence." The record does not contain any transcription of this exhibit review.
 {¶ 89} A large notebook of the state's exhibits was provided to this court on appeal. While it could be inferred and appellant presumes that the exhibits were given to the jury from counts that had been dismissed, the record cannot affirm or refute that contention. Further, we note that the record contains no objection from appellant at this stage of the proceeding regarding the omission or inclusion of exhibits on the dismissed counts. Therefore, this issue is reviewed for plain error.
 {¶ 90} The test for noticing plain error is whether or not the outcome of the trial would clearly have been otherwise except for the error.State v. Stallings, 89 Ohio St.3d 280, 285, 2000-Ohio-164. Appellant failed to show this court that the outcome would clearly have been different because of the jury's alleged exposure to those exhibits. We cannot say that the outcome of the trial would clearly have been otherwise, except for the error. Appellant's fifth assignment of error is overruled.
 {¶ 91} We have considered all of the other issues raised by appellant under his five assignments of error, and with the exceptions noted above, we find them without merit.
 {¶ 92} Appellant's conviction on all counts is affirmed. The order of restitution in appellant's sentence is affirmed in part and reversed in part, with a remand for further consideration for four of the victims.
Walsh and Hendrickson, JJ., concur.
Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] While the language was similar to appellant's written proposed instruction, other portions of the proposed money laundering jury instructions were rejected by the trial court, who stated that it would use the state's proposed instruction. We were not able to locate a copy of the state's proposed instructions in the record.
[2] One of appellant's theft convictions was a misdemeanor of the first degree. R.C. 2929.21(E) states that the court may require a person convicted of a misdemeanor to make restitution for all or part of the property damage that is caused by the offense and for all or part of the value of the property that is the subject of any theft offense.